Richard R. Barker
Acting United States Attorney
Eastern District of Washington
Caitlin Baunsgard
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JUN 1 2 2025

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

TIMOTHY GARY MADDOX,

Defendant.

2:23-CR-00143-TOR-1

PLEA AGREEMENT

Plaintiff United States of America, by and through Richard R. Barker, Acting United States Attorney for the Eastern District of Washington, and Caitlin Baunsgard, Assistant United States Attorney for the Eastern District of Washington, and Defendant, TIMOTHY GARY MADDOX ("Defendant"), both individually and by and through Defendant's counsel, Brooke Hagara, agree to the following Plea Agreement:

1.    Guilty Pleas and Maximum Statutory Penalties:

Defendant agrees to enter a plea of guilty to Count 2 and Count 5 of the Indictment filed on December 19, 2023.

Count 2 charges Defendant with Possession with Intent to Distribute 400 Grams or More of Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(vi), a

PLEA AGREEMENT - 1

Class A felony. Defendant understands that the following potential penalties apply as he has a previous serious drug felony conviction under 21 U.S.C. § 802(57)[1]:

    a.    a term of imprisonment of not less than 15 years and no more than a life term;

    b.    a term of supervised release of not less than 10 years;

    c.    a fine of up to $20,000,000; and

    d.    a $100 special penalty assessment.

Count 5 charges Defendant with Unlawful Use of a Communications Facility, in violation of 21 U.S.C. § 843(b), a Class E felony. Defendant understands that the following potential penalties apply:

    a.    a term of imprisonment of not more than 4 years;

    b.    a term of supervised release of not more than 3 years;

    c.    a fine of up to $250,000; and

    d.    a $100 special penalty assessment

2.    <u>Supervised Release</u>:

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

    a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

    b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

---

[1] Defendant specifically waives any further notice of this prior conviction pursuant to 21 U.S.C. § 851.

PLEA AGREEMENT - 2

c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3.    Denial of Federal Benefits:

Defendant understands that by entering this plea of guilty to Count 2, Defendant is no longer eligible for assistance under any state program funded under part A of Title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Defendant also understands that the Court may deny Defendant's eligibility for any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

4.    Potential Immigration Consequences of Guilty Pleas:

If Defendant is not a citizen of the United States, Defendant understands the following:

a.    pleading guilty in this case may have immigration consequences;

b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

PLEA AGREEMENT - 3

d.      no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5.      The Court is Not a Party to the Plea Agreement:

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a.      sentencing is a matter solely within the discretion of the Court;

b.      the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c.      the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d.      the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e.      the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f.      the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

6.      Waiver of Constitutional Rights:

Defendant understands that by entering these guilty pleas, Defendant is

PLEA AGREEMENT - 4

knowingly and voluntarily waiving certain constitutional rights, including the following:

  a. the right to a jury trial;

  b. the right to see, hear and question the witnesses;

  c. the right to remain silent at trial;

  d. the right to testify at trial; and

  e. the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

7. <u>Elements of the Offense</u>:

a) *Count 2:*

The United States and Defendant agree that to convict Defendant of Possession with Intent to Distribute 400 Grams or More of Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(vi), the United States would have to prove beyond a reasonable doubt the following elements:

  *First*, on or about November 30, 2023, in the Eastern District of Washington, Defendant knowingly possessed a mixture or substance containing a detectable amount of fentanyl;

  *Second*, the Defendant possessed the mixture or substance containing a detectable amount of fentanyl with the intent to distribute it to another; and

PLEA AGREEMENT - 5

*Third*, the mixture or substance containing a detectable amount of fentanyl weighed more than 400 grams.

b)    *Count 5*

The United States and Defendant agree that to convict Defendant of Unlawful Use of a Communication Facility, in violation of 21 U.S.C. § 843(b), the United States would have to prove beyond a reasonable doubt the following elements:

*First*, on or about November 30, 2023, in the Eastern District of Washington, Defendant knowing used a communications facility, to wit: the interstate mail system; and

*Second,* Defendant acted with the intent to commit, cause, or facilitate the commission of a drug felony, namely Conspiracy to Distribute 400 Grams or More of Fentanyl, in violation of 21 U.S.C. § 846.

7.    <u>Statement of Facts and Stipulation:</u>

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea. The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

Spokane-area law enforcement was investigating the fentanyl-trafficking activities of Timothy MADDOX and identified him as a significant drug trafficer in the Spokane area as well as northern Idaho. The investigation revealed MADDOX was connected to co-defendant, Nicholas ADAMS, and ADAMS' residence in Spokane, Washington, and a tracker on MADDOX's Mercedes vehicle showed ADAMS' residence was a frequent stop. The Department of

PLEA AGREEMENT - 6

Homeland Security Investigations ("HSI") identified ADAMS' address as receiving multiple suspicious packages from a China-based company known for selling pill presses and pill press dies. Subsequent review of records showed MADDOX was also obtaining parcels from similar China-based companies, to include one to his mother's residence.

On November 30, 2023, multiple search warrants were executed on locations associated to MADDOX and ADAMS. The seized substances were sent to the Drug Enforcement Administration ("DEA") Laboratory for analysis.

*Search of ADAMS' Residence*

ADAMS' residence was searched pursuant to a search warrant. There was dominion and control paperwork throughout the residence, and it appeared ADAMS lived at the location alone. Throughout the main floor, multiple plastic bags and open containers were found which contained large amounts of fentanyl pills, fentanyl powder, cocaine, cocaine base, and various other types of controlled substances. There was also a bag containing numerous unopened bottles of acetaminophen, a common binding agent in the production of fentanyl pills.

In the living room area was a large plastic bag containing approximately 1,363.1 grams of fentanyl powder. The DEA Laboratory determined two of ADAMS' fingerprints were also on that plastic packaging. Also located in the living room area spread amongst several containers was what the DEA Laboratory determined to be approximately 428.2 grams of actual (pure) methamphetamine, 4,119 fentanyl pills (weighing 445.422 grams), 198.4 grams of cocaine, and 1,234.726 more grams of fentanyl powder. Also in the living room area, there was a loaded, stolen Glock Model 19 9mm pistol bearing serial number SA128008, under a cushion on the couch next to buckets of loose fentanyl pills. The firearm was modified to be fully automatic. In that room, there were also two televisions that were displaying live security camera footage from multiple cameras around

PLEA AGREEMENT - 7

the exterior of the house.

In the kitchen area, law enforcement located several loose fentanyl pills, approximately 4 grams of fentanyl powder, and approximately 300 grams of a binding agent. Also in the kitchen was a blender and a half-eaten pizza covered with what appeared to be fentanyl powder. There was also a Polymer 80 lower, AR-type 9mm pistol with no serial number, that was loaded with 1 round in the chamber and the safety was off. The firearm was modified to be fully automatic and had a silencer attached to it. It was precariously perched on the kitchen counter.

In an attic crawlspace above the main floor of the residence, which was only accessible from an access panel exterior to the house, law enforcement found a backpack concealed behind a chimney that contained a .22 revolver pistol, and multiple firearm holsters.

In ADAMS' bedroom, there was a wooden table with a hidden compartment beneath the top. Inside that compartment was ammunition, magazines, and firearm accessories, and about $25,700 in U.S. Currency bundled in rubber bands as well as what the DEA Laboratory has determined to be approximately 49.87 grams of bromazolam and 12.6 grams of MDMA.

On the back porch of the residence, on a washing machine, law enforcement located what he DEA Laboratory determined to be approximately 11,322 fentanyl pills (weighing 1,354.5 grams).

In the basement of the residence, there was a false wall with a hidden access panel, behind which was a small square room. Within that room was an apparent fentanyl pill manufacturing operation, consisting of a pill tableting machine (or "pill press"), additional pill press components to include two small cardboard boxes containing numerous metal dies/stamps, a countertop-style mixer and blender, buckets and containers of various powders/ingredients, a plastic container

PLEA AGREEMENT - 8

with small round blue pills with "M" and "30" stamped on them (*i.e.* completed fentanyl pills), a plastic container with a mixture of bluish powder and broken or crumbled blue pills. The pill press had multiple sets of dies installed, and blue powder was present around the dies and the infeed/outfeed portions of the machine, indicated it had been used.

The entire room and everything in it were contaminated and covered in powder, and airborne powder was present throughout the basement. Personnel with hazardous material protective gear removed the contents of the hidden room to the front yard for processing. A sample of blue powder was collected from the machine itself and was seized as a separate item for testing. The evidence from the basement was sealed into barrels and buckets and seized.

The seized pill press can further be described as a rotary-style multi-station tablet pressing machine; that is, a machine that utilizes several pairs of upper and lower dies that rotate through to manufacture pills at high output. A label on the motor housing read: "Guangzhou Sanjing Electric Co, Ltd", with electrical power/input/output specifications listed. An Internet search showed that Guangzhou Sanjing Electric is a company located in Guangzhou, China. This is a commercial pill press which can produce a very large quantity of pills. Roughly calculated, this commercial pill press could have produced over 2 million fentanyl pills, based on the quantity of powder fentanyl seized.

In the detached garage of the residence, there was a trash bag containing discarded shipping boxes. One of the boxes was addressed to "Sean gray 2424 e sanson Spokane WA 99217." The return address was in Santa Ana, CA; however, the box also contained labels and printing in both hand-written and printed Chinese writing. A paper label with Chinese writing had been partially torn off the box, and the shipping label containing the CA return address and recipient information was placed over it. As law enforcement was executing the search warrant, a UPS

PLEA AGREEMENT - 9

delivery person approached, and stated they had a package addressed to "Sean John" at 2424 E Sanson. On one side was a shipping label with both English and Chinese writing. Included on that label are "consignee: Sean John", "address: 2424 e sanson Spokane WA 99217 USA", "MADE IN CHINA." The package was seized, and a supplemental search warrant was executed. The package was found to contain additional pill dies.

### Search of ADAMS' Storage Unit

Also on November 30, 2023, a search warrant was executed on a storage unit rented to ADAMS in the Medical Lake, Washington area. In that storage unit, law enforcement found another pill press machine. This machine can be further described as a single punch tableting machine, that is, a machine that utilizes a single pair of upper/lower die to manufacture pills. That machine also bore labeling with a mixture of English and Chinese writing.

### Search of MADDOX'S Residence and Vehicle

The same day, a search warrant was executed at MADDOX'S Spokane-area apartment. No one was encountered in the residence. During the search, law enforcement found five firearms, three sets of body armor, and assorted ammunition and firearm accessories as well as controlled substances located in the toilet tank. The DEA Laboratory determined the seized substances to be approximately 426.6 grams of actual (pure) methamphetamine, 2.4 grams of heroin, 59.4 grams of cocaine, 42.5 grams of fentanyl powder, and 48 fentanyl pills (weighing 8.307 grams).

The same day, MADDOX was encountered driving his Mercedes vehicle in the Spokane area. MADDOX exited the driver's seat of the vehicle and was arrested. A search warrant was executed on MADDOX's Mercedes. A Smith & Wesson Model M&P 45 .45 caliber pistol bearing serial number HSD2804 was found in the driver's floorboard area of the vehicle consistent with MADDOX

PLEA AGREEMENT - 10

have the firearm on his person when contacted by law enforcement. In the trunk, law enforcement found two backpacks that were each found to contain controlled substances as well as 16 large empty acetaminophen bottles. In a red and black backpack, law enforcement located multiple types of controlled substances. The DEA Laboratory determined the seized substances to be approximately 636.3 grams of heroin, 510.2 grams of cocaine, 26.6 grams of fentanyl powder, 11 oxycodone pills (weighing 1.438 grams), and 3.071 grams of MDMA as well as approximately $31,769 in U.S. Currency. In a black and blue backpack that surveillance agents had previously observed MADDOX carrying, a large amount of fentanyl powder was located as well as a Sig Sauer Model P239 9mm pistol bearing serial number SA12808. The DEA Laboratory determined there to be approximately 2,998.5 grams of fentanyl powder.

*Cooperating Defendant Interview*

During the investigation, a cooperating defendant ("CD") was interviewed. In summary, the CD advised that he/she had personal knowledge that MADDOX and ADAMS were involved in pressing pills, specifically combining fentanyl powder and acetaminophen. The CD advised MADDOX spent a lot of time at ADAMS' residence pressing pills and had seen MADDOX in possession of large quantities of pressed pills as well as fentanyl powder and methamphetamine.

8. The United States Agrees:

a. *Not to File Additional Charges*:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

PLEA AGREEMENT - 11

b.    *Dismiss Remaining Counts*:

The United States Attorney's Office agrees to dismiss the remaining counts of the Indictment at the time of sentencing, provided Defendant does not breach the Plea Agreement or test positive for a controlled substance before sentencing.

9.    United States Sentencing Guideline Calculations:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "USSG" or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines.  The United States and Defendant agree to the following Guidelines calculations

a.    *Count 2*:

1)    Base Offense Level:

The parties agree and stipulate that more than 90,000 kilograms of converted drug weight[2] was possessed with the intent to distribute in furtherance of the criminal activity jointly undertaken by Defendant and his co-conspirator; this amount was within the scope of Defendant's agreement; this amount was reasonably foreseeable to this Defendant in connection with this offense and the overall conspiracy; and this Defendant's relevant conduct for sentencing purposes should be calculated based upon this amount, pursuant to USSG §1B1.3.

Therefore, the parties agree and stipulate that his base offense level is 38. *See* USSG §2D1.1(a)(5), (c)(1); USSG §1B1.3(a).

2)    Specific Offense Characteristics:

The United States and Defendant agree to recommend a 2-level enhancement a Defendant possessed a dangerous weapon connected to the offense. *See* USSG §2D1.1(b)(1).

---

[2] The parties agree to recommend the Court use the Drug Conversion Table pursuant to USSG §2D1.1 cmt 8(D).

PLEA AGREEMENT - 12

The United States and Defendant agree to recommend a 2-level enhancement as he maintained a premises for the purpose of manufacturing or distributing controlled substances. *See* USSG §2D1.1(b)(12).

The United States and Defendant agree to recommend a 2-level enhancement as the offense involved the unlawful transportation, storage, or disposal of hazardous waste. *See* USSG §2D1.1(b)(14)(A)(ii).

The United States and the Defendant agree to recommend no additional specific offense characteristics may apply. *See generally* USSG §2D1.1(b).

b.    *Count 5*:

The guideline sentence for this offense is the same as the underlying offense. *See* USSG §2D1.6.

c.    *Role Adjustment*:

The United States and the Defendant agree to recommend no role adjustment applies. *See generally* USSG §§3B1.1; 3B1.2.

d.    *Multiple Count Analysis*:

The United States and Defendant agree these are closely related counts and the guideline is the same for both counts. *See* USSG §3D1.3(a).

e.    *Acceptance of Responsibility*:

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a), (b), if Defendant does the following:

    i.    accepts this Plea Agreement;

    ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

PLEA AGREEMENT - 13

    iv.      provides complete and accurate information during the sentencing process; and

    v.      does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

    f.    *Criminal History*:

The United States and Defendant have made no agreement and make no representations as to Defendant's Criminal History Category, which shall be determined by the Court at sentencing after the Presentence Investigation Report is completed.

    g.    *Agreements Regarding Representations to the Court*:

The United States has a duty of candor to the tribunal. If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

Regarding all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

PLEA AGREEMENT - 14

i.  The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

ii.  The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

iii.  The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

iv.  The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

v.  The United States and Defendant may each respond to any arguments presented by the other;

vi.  In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

PLEA AGREEMENT - 15

vii.    In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

viii.    The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

ix.    Defendant may make any sentencing arguments consistent with this Plea Agreement Defendant deems appropriate.

h.    *No Other Agreements*:

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

PLEA AGREEMENT - 16

10.    Length of Incarceration[3]:

The United States agrees to recommend a term of incarceration no higher than 240 months. Defendant is free to recommend any legal sentence; however, acknowledges he cannot be sentenced to less than the applicable mandatory minimum 180 months.

11.    Supervised Release:

The United States and Defendant each agree to recommend 5 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

---

[3] At the time of Defendant's original sentencing in the District Court, the United States agrees to make a sentencing recommendation to the Court that is consistent with this Plea Agreement. The United States' agreement to make such a recommendation is limited exclusively to the time of Defendant's original sentencing in the District Court. The United States' agreement to make such a recommendation does not prohibit or limit in any way the United States' ability to argue for or against any future sentencing modification that takes place after Defendant's original sentencing in the District Court, whether that modification consists of an amendment to the Guidelines, a change to a statutory minimum or maximum sentence, any form of compassionate release, any violation of Supervised Release, or any other modification that is known or unknown to the parties at the time of Defendant's original criminal sentencing. In this Plea Agreement, the United States makes no promises or representations about what positions the United States will take or recommendations the United States will make in any proceeding that occurs after Defendant's original sentencing in the District Court.

PLEA AGREEMENT - 17

a.    The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control; and

b.    Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

12.    Criminal Fine:

The United States and Defendant agree to recommend no criminal fine be imposed. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

13.    Mandatory Special Penalty Assessment:

Defendant agrees to pay the $200 mandatory special penalty assessment ($100 per count of conviction) to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

14.    Payments While Incarcerated:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

15.    Additional Violations of Law Can Void Agreement:

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

PLEA AGREEMENT - 18

16.    Waiver of Appeal and Collateral Attack Rights:

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court. Defendant expressly waives all rights to appeal Defendant's conviction and sentence.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

17.    Withdrawal or Vacatur of Defendant's Plea:

Should Defendant successfully move to withdraw from this Plea Agreement or should either of Defendant's convictions be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a.    this Plea Agreement shall become null and void;

    b.    the United States may prosecute Defendant on all available charges;

    c.    the United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

PLEA AGREEMENT - 19

d.    the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and defenses Defendant might have to the United States' decision about how to proceed, including a claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

18.   Integration Clause:

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

\\

\\

PLEA AGREEMENT - 20

## Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Richard R. Barker
Acting United States Attorney

_____ for        _____6/12/25_____
Caitlin Baunsgard                          Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement, and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____        _____6-12-25_____
TIMOTHY GARY MADDOX                 Date
Defendant

I have read the Plea Agreement and have discussed the contents of the Plea Agreement with Defendant. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in Defendant's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's plea of guilty.

_____        _____6/12/25_____
Brooke Hagara                              Date
Attorney for the Defendant

PLEA AGREEMENT - 21